**CONSTITUTION BANK, Plaintiff,**

v.

**Anthony J. DiMARCO and Rose DiMarco, Defendants.**

**No. 92–CV–5670.**

United States District Court, E.D. Pennsylvania.

Nov. 8, 1993.

---

1. Plaintiff alleges contact with Garlock gaskets and OCF "Kaylo" insulation.

See also 815 F.Supp. 154.

Mark A. Kearney, John M. Elliott, Gerard P. Egan, Elliott, Bray & Riley, Blue Bell, PA, for plaintiff.

Henry F. Reichner, Reed, Smith, Shaw & McClay, Thomas C. Zielinski, Cozen & O'Connor, Philadelphia, PA, Christopher K. Walters, Philadelphia, PA, for defendants.

## MEMORANDUM and ORDER

JOYNER, District Judge.

### I. Introduction

This court has in this case already adjudicated one motion to dismiss and two motions for judgment on the pleadings. As a result of these motions, we have dismissed five of the original seven defendants and five of the eight counts against the remaining defendants, Anthony J. DiMarco (DiMarco, Sr.) and Rose DiMarco (Defendants). In the remaining three counts, Constitution Bank (the Bank) seeks to recover compensatory and punitive damages arising from allegations of fraud, conspiracy to commit fraud and a common law tort of civil aider and abettor liability.

Now before the court is Defendants' motion for summary judgment. For reasons explained below, the motion is granted.

### II. Facts

The relevant facts of the case are not in dispute. Anthony DiMarco, Jr. (DiMarco, Jr.) was the sole shareholder, officer and director of a corporation called DiMarco Development Group at Hidden Creek, Inc. (DiMarco Development Group). DiMarco, Jr., along with periodic business partner Joseph Dilullo, developed real estate. Early in 1990, DiMarco, Jr.'s financial condition began a downward slide forcing him to borrow large sums of money from several sources.

DiMarco, Sr. was one such source. On July 12, 1990, DiMarco, Sr. loaned $200,000 to his son, DiMarco, Jr., properly securing the transaction with a note and a mortgage on DiMarco, Jr.'s residence. On October 16, 1990, DiMarco Jr. executed another note and a second mortgage on his house to secure an additional $100,000 loan from DiMarco, Sr.[1] DiMarco, Sr., through his attorney, properly recorded both mortgages on October 30, 1990 in Montgomery County, Pennsylvania.

DiMarco, Jr. also procured loans from Constitution Bank. At the Bank's request, DiMarco, Jr. submitted a personal financial statement before qualifying for the loan. Early in 1990, on the strength of the financial statement and endorsements from other creditors, the Bank loaned $300,000 to DiMarco, Jr. The Bank secured the loan with DiMarco, Jr.'s personal guaranty and two houses then under construction at a development project. DiMarco, Jr. fully repaid the loan by August 1990. In October, 1990, the Bank gave DiMarco, Jr. a second $300,000 loan based on his previous loan with the Bank and the updated financial statement. This loan, however, was unsecured and backed only by DiMarco Jr.'s personal guaranty.

In 1991, DiMarco, Jr.'s financial condition seriously worsened resulting in the default on his loans with the Bank. In December, 1991, DiMarco, Jr. and the Bank entered into restructuring and forbearance negotiations. DiMarco, Jr. used his personal residence as part of the negotiations.

DiMarco, Sr., like any other creditor, took steps in an effort to protect his interest and strengthen his position against his son's other creditors.[2] On January 30, 1992, DiMarco, Sr. publicly confessed judgment against his son on the basis of the $100,000 note and accompanying mortgage. That same day DiMarco, Sr. requested that DiMarco, Jr.'s homes be sold at a sheriff's sale in order to satisfy his judgment. Through his attorney, DiMarco, Sr. purchased the residence at a publicly held sheriff's auction on April 15, 1992. At the time of the confession, DiMarco, Sr. was not aware of DiMarco, Jr.'s $300,000 loan with the Bank.

---

1. From 1990 to 1993, DiMarco, Sr. loaned his son a total of $635,350.

2. DiMarco, Jr. also owed Meridian Mortgage approximately $25,000,000 in connection with the DiMarco Development Group. Additionally, his residence was encumbered by mortgages from two other lending institutions.

In an effort to help his son out of financial trouble, DiMarco, Sr. agreed to purchase a certificate of deposit from the Bank and then pledge the certificate as collateral on DiMarco, Jr.'s behalf. Defendants subsequently caused Pennfield Manor Apartments (Pennfield Manor), a real estate project in which Defendants own an interest, to purchase the certificate on April 21, 1992.

On May 21, 1992, in a meeting with DiMarco, Jr., the Bank first learned that Defendants had purchased DiMarco, Jr.'s home in a publicly held sheriff's sale. The Bank on May 26, 1992 unsuccessfully attempted to confess judgment against the DiMarco Development Group in order to protect the remaining rights possessed under its loan arrangement with DiMarco, Jr.

## III. *Discussion*

In a motion for summary judgment, the moving party bears the initial burden of exposing any absences of material fact in the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Following such a showing, the non-moving party then bears the burden of proof for establishing the existence of every element essential to their case. *Id.* at 322, 106 S.Ct. at 2552. In making its decision, the court must view all inferences in a light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

Because of the nature of allegations of fraud, the party raising the allegations bears a higher burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Thus, in order to avoid a summary judgment, the party raising the allegations must present evidence of fraud from which a jury could, by clear and convincing evidence, find such fraud. *Id.; Mattern Hatchery, Inc. v. Bayside Enterprises, Inc.,* 775 F.Supp. 803, 809 (M.D.Pa.1991) (to avoid a summary judgment for a fraud claim, plaintiff must establish by clear and convincing evidence the necessary elements of fraud).

### A. *Allegations of Fraud*

The Bank alleges that Defendants used the restructuring negotiations to forestall any legal action by the Bank against DiMarco, Jr. so that DiMarco, Sr. could purchase his son's residence at the Sheriff's sale. The Bank has now apparently abandoned its original allegations that Defendants themselves actually made the fraudulent misrepresentations upon which the Bank relied. Advancing under the doctrine of apparent authority, the Bank instead argues that DiMarco, Jr. allegedly made the fraudulent misrepresentations on Defendants' behalf thus making them liable for compensatory and punitive damages.

Although the question of whether a principal-agent relationship exists is normally one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the question is one properly decided by the court. *Joyner v. Harleysville Ins. Co.,* 393 Pa.Super. 386, 574 A.2d 664, 668 (1990).

Pennsylvania courts define apparent authority as that authority which, although not actually granted, the principal knowingly allows the agent to exercise or possess. *D & G Equipment v. First National Bank,* 764 F.2d 950, 954 (3d Cir.1985); *Browne v. Maxfield,* 663 F.Supp. 1193, 1199 (E.D.Pa.1987). In cases of apparent authority, the intent to be bound to a third party flows from the principal's conduct and not from that of the agent. *Id.* Additionally, without actual knowledge of the agent's authority to bind the principal, the third party must exercise only reasonable diligence to ascertain the agent's authority. *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215, 1222 (1987); *see also D & G Equipment Co.,* 764 F.2d at 954 *quoting* Restatement (Second) of Agency, § 8 (1985).

Given the facts, we hold that a jury could find it unreasonable for the Bank to have relied upon DiMarco, Jr.'s alleged apparent authority to bind Defendants. The Bank points to Defendants' promise to pledge a $100,000 certificate of deposit in order to help secure DiMarco, Jr.'s loan as an outward manifestation of their intent to be bound by their son as their agent.

The Bank, however, fails to demonstrate that this arrangement represents anything more than a business deal entered into by DiMarco, Jr. in order to resolve his own financial problems. Throughout the entire business relationship with the Bank, DiMarco, Jr. acted on his own behalf. First, DiMarco, Jr. was at all time the principal in any dealings with the Bank. DiMarco, Jr. applied for and accepted the loan from the Bank based on his personal financial statement and secured it with his personal guaranty. When he defaulted on the loan, DiMarco, Jr. alone entered into negotiations with the Bank to restructure his outstanding debt.

Second, Defendants were never a principal party in any dealings with the Bank. Indeed, Defendants were not aware of DiMarco, Jr.'s transactions with the Bank until sometime in 1992. Additionally, Defendants were not shareholders, officers or directors in DiMarco, Jr.'s business, DiMarco Development Group. There is no evidence that Defendants had any interest in DiMarco, Jr.'s business affairs. Pennfield Manor's purchase of the certificate indicates nothing more than Defendants agreeing to help DiMarco, Jr. renegotiate his debt with the Bank.

By relying on the doctrine of apparent authority, the Bank concedes that Defendants did not directly make any fraudulent misrepresentations. However, the Bank has demonstrated nothing that would lead a reasonable jury to believe that DiMarco, Jr. possessed any authority of any sort to act on Defendants' behalf. Indeed, the facts clearly point out that DiMarco, Jr. was the principal in all relevant events and that the actions that he took, alleged or otherwise, were intended to advance his own interests and not that of the Defendants. Accordingly, we grant summary judgment with respect to count III.

### B. Allegations of Conspiracy to Defraud

The Bank also seeks to recover compensatory and punitive damages arising from a conspiracy allegedly orchestrated by Defendants to defraud the Bank during the Bank's restructuring and forbearance negotiations with DiMarco, Jr. The Bank relies primarily on circumstantial evidence to prove conspiracy. The circumstantial evidence presented by the Bank, however, does not demonstrate that Defendants possessed the requisite intent to injure.

To prove a civil conspiracy, the Bank must show that two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means. See Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 210, 412 A.2d 466, 472 (1979). In Pennsylvania, the elements of conspiracy may be proven entirely by circumstantial evidence provided that the evidence is full, clear and satisfactory. Rumbaugh v. Beck, 411 Pa.Super. 220, 236, 601 A.2d 319, 327 (1991). Proof of the intent to injure, however, is essential, and this intent must be absent justification. Thompson Coal Co., 488 Pa. at 211, 412 A.2d at 472.

In Thompson Coal Co., the Pennsylvania Supreme Court held that where the facts show that a person acted to advance his own business interests, those facts constituted justification and negate any alleged intent to injure. Id. The court also noted that although conspiracy is normally proven by circumstantial evidence, courts must not forget that conspiracy is easily alleged and that in a race between creditors, suspicion or the possibility of a guilty connection is not sufficient proof. Thompson Coal Co., 488 Pa. at 212, 412 A.2d at 473, n. 9. There, the court affirmed the summary judgment on a conspiracy charge finding that the record did not demonstrate an intent to injure. Instead, the court found facts indicating that the defendant merely acted to advance his own business interests. Thompson Coal Co., 488 Pa. at 212, 412 A.2d at 473.

Similarly, the Bank has failed to demonstrate that Defendants possessed an intent to injure which was absent justification. Instead, the record shows that Defendants acted as any interested and informed creditors would normally act in protecting their own interests. First, Defendants properly filed a mortgage on DiMarco, Jr.'s residence in October, 1991 in order to properly secure his loan, a precaution any prudent creditor

would take. This lawful act occurred well before the Bank and DiMarco Jr. entered into restructuring and forbearance negotiations. Second, at the first signs of financial downfall, Defendants lawfully and publicly confessed judgment against DiMarco, Jr. and requested a sheriff's sale to secure their interests. The Bank does not contest that these were the actions that any alert creditor would take under similar circumstances.

Finally, the Bank again points to Pennfield Manor's purchase of the certificate of deposit as a clear indication of a conspiracy to defraud. We find, however, that the timing of the purchase of the certificate negates any indication of a conspiracy. Defendants' actions as a responsible creditor began in October when they secured their interest by properly filing the mortgages. Later, Defendants initiated protection of their interest in January by publicly and openly confessing judgment against DiMarco, Jr. Defendants' actions did not preclude the Bank from taking similar actions. Nor was the Bank represented on April 15 when Defendants purchased DiMarco, Jr.'s residence at a publicly held Sheriff's sale. The Bank throughout this time period could have taken steps to protect its interest. Finally, Pennfield Manor purchased the certificate *after* the Sheriff's sale and Defendants owned DiMarco, Jr.'s residence.

Thus, given the relevant time period, the Bank has not demonstrated that the purchase of the certificate constituted a manifestation of a conspiracy.[3] Moreover, The Bank has not shown that Defendants possessed the intent to injure absent justification, an essential element to the conspiracy charge. As a result, summary judgment is also granted with respect to count IV.

### C. *Common Law Tort of Aider and Abettor Liability*

■ Finally, the Bank seeks compensatory and punitive damages under a novel, common law tort of civil aider and abettor liability. However, we find no basis in Pennsylvania law for such a tort. Therefore, summary judgment is granted regarding count IX.

An appropriate order follows.

### ORDER

AND NOW, this 8th day of November, 1993, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that the Defendants' Motion is GRANTED with respect to counts III, IV, and IX.

---

**3.** The Bank also argues pursuant to Rule 3132 of the Pennsylvania Rules of Civil Procedure that the relevant time period should be extended to May 14, 1992. Rule 3132 allows a "party in interest" to petition to have a sale set aside any time before the delivery of the sheriff's deed, in this case, May 14. However, the Bank lacked "party in interest" status because it failed to obtain an interest in the property before the execution sale. *See Union Nat. Bank of Reading v. DeLong Furniture Corp.,* 344 Pa. 583, 26 A.2d 440, 441 (1942). The Bank never acquired a mortgage on DiMarco, Jr.'s house. And despite the fact that he had allegedly been in default since July, 1991, the Bank failed to confess judgment against DiMarco, Jr. until after the execution sale.