**GENERALI—U.S. BRANCH, Plaintiff,**

**v.**

**GENESIS INSURANCE CO. and Genesis Underwriting Management Co., Defendants.**

**No. 94 Civ. 8492 (JGK).**

United States District Court, S.D. New York.

May 20, 1996.

Christopher J. Carnicelli, Patricia A. Moores, Pino & Associates, White Plains, New York, for Plaintiff.

David J. Burke, Stephen E. Goldman, Robinson & Cole, Hartford, Connecticut, for Defendants.

### *OPINION AND ORDER*

KOELTL, District Judge:

This is an action by Generali—U.S. Branch, ("Generali"), against Genesis Insurance Co. and Genesis Underwriting Management Co., (collectively "Genesis"), for contribution of $3.375 million representing one-half of Generali's settlement of an insurance claim arising from a fire loss on November 23, 1992 in Philadelphia, Pennsylvania. Generali is a corporation organized and existing under the laws of New York with its principal place of business in New York. Both Genesis defendants are Connecticut corporations with their principal places of business in Connecticut. Jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332.

Generali alleges that Genesis was a co-insurer of the property and is obligated to contribute equally to the settlement of the claim. Genesis denies any liability and asserts a variety of affirmative defenses as well as a counterclaim for reformation of the Genesis insurance policy to reflect that it was allegedly cancelled prior to the November 23, 1992 loss.

The parties have each moved for summary judgment. Generali argues that Genesis was

a co-insurer by virtue of a policy that was not cancelled as of the date of the loss. Generali argues that Genesis' efforts to cancel that policy for non-payment were ineffective and contrary to applicable Pennsylvania law. Generali then argues that because the Genesis policy was effective on the date of the fire loss, the "Other Insurance" provision of the Generali policy limits its liability to half of the claim and affords Generali a right to contribution from Genesis. In response, Genesis makes three arguments. First, Genesis maintains that its cancellation of the policy was indeed effective prior to the fire loss because the insured, Daniel J. Lasdon, had not made the required premium payment on the policy covering the Philadelphia property. Second, Genesis argues that even if such a payment was made, Lasdon never objected to the cancellation of the policy when the cancellation notice was sent to Lasdon and his agents. Third, Genesis points out that Generali's motion is directed only at its Third Affirmative Defense and even if it is granted there are twelve other defenses that must be resolved by a trial on the merits.

Genesis' cross-motion for summary judgment is also based on three arguments. First, Genesis argues that its policy was in fact cancelled. Second, Genesis argues that it did not receive timely notice of the fire loss, either from its alleged co-insurer Generali, or the insured, Lasdon, or his agents. Third, relying on principles of res judicata, Genesis argues that Generali's failure to raise the "Other Insurance" provision in its policy as a defense in the initial lawsuit by Lasdon on the underlying claim bars Generali from asserting it now as the basis of an action for contribution against Genesis. Generali contests each of these arguments. With respect to the cancellation of the Genesis policy, Generali argues (i) that the cancellation was ineffective under Pennsylvania law because Lasdon had paid the premium; (ii) that Lasdon's agents were not capable of authorizing cancellation or substitution of Genesis' coverage; and (iii) that Lasdon never authorized or acquiesced to any such cancellation or substitution in any event. Generali also argues that Genesis as a co-insurer in an action for contribution cannot assert the lack of timely notice as a defense. Final-

ly, Generali argues that even if Genesis were entitled to such a defense, it did receive notice once Generali learned of the Genesis coverage and Genesis suffered no prejudice from the delay.

For the reasons that follow, both motions are denied.

## I.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

## II.

■ The principal thrust of Generali's summary judgment motion is that Genesis could not have lawfully cancelled the policy covering the Philadelphia property based on non-payment of premiums because Lasdon did, in fact, pay. Generali maintains it is entitled to judgment as a matter of law on this point because of the alleged absence of evidence to controvert its contention that Lasdon's premium payment was made to Genesis. That contention is premised on two independent theories. First, Generali alleges an agency relationship existed between Genesis and the wholesale insurance broker, S. Kornreich & Sons ("Kornreich") and Associated Programs, Inc. ("API"), a separate corporate division within Kornreich responsible for the administration of a wholesale insurance brokerage program through which Lasdon purchased insurance (API and Kornreich are collectively referred to as "API/Kornreich"). Generali argues that Genesis has failed to offer any evidence to dispute the fact that Lasdon paid premiums to API/Kornreich, through the local broker, Laster, Samans & Levin ("LS & L"). Generali then argues that API/Kornreich was Genesis' agent for the purpose of collecting premium payments by virtue of the brokerage agreement between the two. Generali's second argument is based on Genesis allegedly returning the unearned portion of Lasdon's premium payment to API/Kornreich. Generali argues that this action by Genesis eliminates any question that Genesis received the premium payment from Lasdon and, therefore, that cancellation for non-payment was improper.

Under either of these two arguments, Generali concludes that the Genesis policy covering the Philadelphia property was in force on the date of the loss. Generali goes on to argue that it is entitled to contribution from Genesis by virtue of the "Other Insurance" provision of the Generali policy. Generali argues that this provision limits its liability to its pro rata share of coverage based on the relationship of the applicable limits of the policies. Because the two policies have applicable limits of $10 million, each insurer is liable for half of the loss. Generali argues that Genesis is liable for its contribution of half of the $6.750 million settlement that Generali paid.

Generali's motion fails because there are genuinely disputed issues of material fact with respect to both of the arguments on which the motion rests.[1] First, Genesis disputes the existence of any agency relationship between Genesis and API/Kornreich by virtue of their brokerage agreement or, indeed, on any other basis. Genesis points out that API/Kornreich never signed the brokerage agreement and, although Genesis did, the lack of a signature by the agent indicates the absence of an intent to be bound to that agreement. That interpretation is supported by the affidavit of a representative of API/Kornreich, Philip Miller, who asserts that API/Kornreich was Lasdon's agent by virtue of the brokerage agreement with the retail broker, LS & L, and that at no time was API/Kornreich functioning as the agent for Genesis with regard to Lasdon's properties. Genesis further supports its denial that API/Kornreich was its agent with the affidavit of Lawrence C. Reid, a Genesis representative, who affirms that Genesis never considered API/Kornreich to be Genesis' agent for any purpose and that Genesis always considered API/Kornreich to be a broker for the insureds covered by the wholesale buying program, including Lasdon. Genesis further supports its position with testimony from Lasdon that he considered LS & L and

---

1. Because the Court denies Generali's motion for summary judgment with respect to the third affirmative defense, there is no need to reach the issue of whether granting the motion would have affected any of the remaining defenses or the counterclaim.

API/Kornreich to be his brokers and authorized them to administer his insurance coverage under the wholesale insurance brokerage program. The dispute surrounding the nature of the relationship between Genesis and API/Kornreich raises issues of fact that cannot be resolved on a motion for summary judgment.[2] *See Constitution Bank v. DiMarco*, 836 F.Supp. 304, 307 (E.D.Pa.1993) (question of "whether a principal-agent relationship exists is normally one of fact for the jury"), *aff'd*, 27 F.3d 556 (3d Cir.1994); *Luber v. Underwriters at Lloyd's*, Civ.A. No. 92–2200, 1992 WL 346467, at *4 (E.D.Pa. Nov. 16, 1992) (same); *United Hospitals, Inc. v. Comprehensive Care Corp.*, Civ.A. No. 90–3889, 1991 WL 125902, at *2 (E.D.Pa. June 26, 1991) ("Where, as here, the authority to bind a party is not created by the written agreement itself, but 'is to be implied from the conduct of the parties, or where the agency is to be established by witnesses, the fact and scope of the agency are [questions of fact].' " (citation omitted) (alteration in original)); *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.*, 414 Pa.Super. 130, 136, 606 A.2d 532 (Super.Ct.1992) ("The nature and extent of an agent's authority is a question of fact for the trier." citing *Joyner v. Harleysville Ins. Co.*, 393 Pa.Super. 386, 574 A.2d 664 (Super.Ct.1990), *appeal denied*, 527 Pa. 587, 588 A.2d 510 (1991)). *See also Jones v. Century Oil U.S.A., Inc.*, 957 F.2d 84, 86–87 (3d Cir.1992) (in context of master-servant relationship, nature of agency relationship where actual conduct is not fully reflected in written agreements is a question of fact).

Moreover, Genesis has presented evidence that API/Kornreich never received a premium for Lasdon's policy in any event. Genesis insists that there is no evidence any such payment was received and relies upon testimony from two Genesis employees, Lisa L. Hurley, a Senior Underwriter, and Lawrence C. Reid, a Vice President for Underwriting, indicating that Genesis never received such a payment and that API/Kornreich personnel also denied receiving any such payment.

With respect to the return of unearned premium to API/Kornreich, Genesis explains that the so-called "return of premium" was actually a transaction relating to balances owed by Genesis to API/Kornreich on other accounts.

Genesis' explanation of the alleged return of premiums and its presentation of facts undermining the existence of an agency relationship between Genesis and API/Kornreich are sufficient to raise genuine issues of material fact that preclude summary judgment at this point.[3] As demonstrated by the extensive evidentiary submissions, the parties genuinely dispute the central factual questions in this case, among which are whether the premiums for the Genesis policy were paid, whether the policy was effective at the time of the loss, whether the policy was validly cancelled, and what the intent of the parties was with respect to the insurance arrangement between Lasdon, API/Kornreich and Genesis, and finally with Generali. These are contested issues that must await a trial before a finder of fact.

### III.

Genesis' cross-motion for summary judgment is based on three independent arguments. The first, the alleged cancellation of the Genesis policy and the substitution of coverage by Generali is foreclosed as a ground for summary judgment because of some of the material factual disputes already discussed. Whether Lasdon authorized cancellation or received notice of the cancellation and acquiesced, or the extent to which API/Kornreich was able to perform such acts as Lasdon's agent are disputed factual issues that must await trial.

---

2. The parties have agreed that the issues of agency, as well as the issues of notice and res judicata discussed below, are all governed by Pennsylvania law, and have so briefed the issues.

3. Additionally, Genesis argues that even if it received premium payments from Lasdon, the cancellation of the policy was effective nonetheless because neither Lasdon nor his agents objected to the cancellation. In reply Generali argues that Lasdon never received any cancellation and never authorized his agents to cancel the policy. Just as Genesis' arguments about the scope of the alleged agency between Genesis and API/Kornreich serve to raise genuine issues of material fact, so too do Generali's protests about the agency alleged between Lasdon his intermediaries.

The second ground for Genesis' motion is the alleged lack of timely notice of the fire. Genesis contends that it did not receive notice of the November 1992 fire from either Lasdon or Generali until January 1994 at the earliest when it was subpoenaed to produce documents in connection with the litigation Lasdon had instituted against Generali in federal court in Philadelphia concerning the fire loss.[4] Genesis argues that it has been prejudiced by the delay because it lost the opportunity to investigate the causes of the fire, assess the damage, and explore potential subrogation. In support of these contentions, Genesis offers a long recitation of the steps it would have taken had it received timely notice of the fire. Genesis also argues that it would never have settled the claim for $6.750 million because the property had not been reconstructed, a condition to a payment based on replacement cost in Genesis' view.

■ Generali argues that late notice is not a defense available to a co-insurer in an action for contribution. In any event, Generali contends that it provided Genesis with notice of the fire as soon as it learned of the Genesis policy during discovery in the underlying lawsuit by Lasdon. Generali also disputes that Genesis was prejudiced by the lack of notice. Generali maintains that it conducted an extensive investigation into the cause and origin of the fire at the Philadelphia property and settled the claim with Lasdon in good faith for a reasonable amount consistent with the policy coverage.

■ Under Pennsylvania law, an insurer that seeks to be relieved of its obligations under an insurance policy on the grounds of late notice must prove both that the notice provision was in fact breached and that the breach resulted in actual prejudice to its position. *See The Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 896–97 (3d Cir.1987) (Becker, J.); *Brakeman v. The Potomac Ins. Co.,* 472 Pa. 66, 74–77, 371 A.2d 193 (1977). The existence of a defense of lack of notice, providing there is actual prejudice, applies even in a lawsuit against a co-insurer based on contribution. *See United Nat'l Ins. Co. v. Admiral Ins. Co.,* Civ.A. No. 90–7625, 1992 WL 210000, at *6 (E.D.Pa. Aug. 19, 1992).[5]

4. Counsel for Genesis argued at the oral argument on the present motion that the notice Genesis was entitled to was Generali's intention to seek contribution. The notice provision of the policy, however, simply provides that the insured must give "prompt notice of the loss or damage." (Genesis Policy at 6, attached as Ex. J. to Genesis' Mem. of L.) On its face, this provision requires notice to Genesis of the loss itself. Genesis has not cited another policy provision or any controlling law for the proposition that a co-insurer is entitled to notice of an actual demand for contribution. And, while Genesis concedes for the purpose of this motion that it received notice in January 1994, to the extent there is any disagreement between the parties about whether the contents of the notice Genesis received constituted adequate notice, such a disagreement is another issue of fact in this case.

5. Generali argues that no lack of notice defense is available to a co-insurer defending a suit for contribution by another co-insurer, relying on *Zurich–American Ins. Cos. v. Atlantic Mut. Ins. Cos.,* 139 A.D.2d 379, 531 N.Y.S.2d 911 (1st Dep't), *aff'd,* 74 N.Y.2d 621, 541 N.Y.S.2d 970, 539 N.E.2d 1098 (1989), and *Ainsworth v. Berg,* 253 Wis. 438, 34 N.W.2d 790 (1948), *vacated and reversed on other grounds,* 253 Wis. 438, 35 N.W.2d 911 (1949). The *Ainsworth* case is inapposite because it involved the question of whether a statutory notice provision could be the source of a limitations defense for a co-insurer where the statutory period had lapsed by the time the contribution action was finally asserted. *See Ainsworth,* 253 Wis. at 445, 34 N.W.2d at 793. The *Zurich–American* case relates to the question of notice under a policy but is directed at the duty to defend rather than the ultimate duty to indemnify. *See Zurich–American,* 139 A.D.2d at 383, 531 N.Y.S.2d at 913 ("This case does not involve, as the motion court mistakenly concluded, the scope of [the defending co-insurer's] concurrent but independent duty to indemnify."). The limited reach of *Zurich–American* was noted later in *New York v. Blank,* 27 F.3d 783, 793 (2d Cir.1994).

Therefore, even if New York or Wisconsin law were authoritative in this case, Generali's reliance on these cases is misplaced. Indeed, more closely analogous New York law suggests that the issue of the reasonableness of notice to a co-insurer is an issue of fact that would preclude summary judgment. *See Lumbermens Mut. Ins. Co. of the Kemper Group of Ins. Cos. v. Lumber Mut. Ins. Co.,* 148 A.D.2d 328, 330, 538 N.Y.S.2d 542, 544 (1st Dep't 1989) (where general liability carrier was notified by workers' compensation carrier of underlying suit two days prior to settlement, "[t]he question of whether the delay in giving notice to [the general liability carrier] was reasonable, considering all of the circumstances, raises triable issues of fact making summary judgment improper." (citations omitted)).

Generali argues that the defense of lack of notice should not be available to a co-insurer because the interests of a co-insurer absent from a litigation will be adequately represented by the co-insurer who defends the suit. Generali relies on cases construing New York law which recognize a defense of lack of notice in a suit between an insured and a primary insurer even without a showing of actual prejudice but do require such a showing in a suit by one insurer for contribution against a co-insurer. *See, e.g., New York v. Blank,* 27 F.3d 783, 795–97 (2d Cir. 1994). The rationale, as explained by the Court of Appeals for the Second Circuit, is that the interests of two co-insurers are identical and a claim for contribution by one against the other should not be precluded due to lack of notice unless some prejudice is shown. *See id.,* 27 F.3d at 797. Where a co-insurer which has not received notice shows actual prejudice, demonstrating that its interests were poorly guarded by the co-insurer who defended the suit, it should not be precluded from raising the defense of lack of notice. Thus, the New York cases on which Generali relies do not support the argument that a co-insurer which shows actual prejudice cannot raise a defense of lack of notice. And they certainly do not indicate such a proposition would be correct under Pennsylvania law.

■ There are, however, disputed questions of material fact with respect to whether Genesis can prevail on its defense of untimely notice. First, as Genesis' counsel noted at argument, API/Kornreich did have notice of the fire loss and was a third-party to the underlying litigation by Lasdon. And, as explained earlier, whether API/Kornreich was an agent for Genesis is disputed. Thus, whether Genesis had notice of the fire loss through its agent, who was a party to the underlying lawsuit by the insured, is also a genuinely disputed issue in this case. Second, even if Genesis did not receive timely notice of the fire loss either directly or through API/Kornreich, the issue of whether Genesis was actually prejudiced by the late notice cannot be decided as a matter of law on this motion for summary judgment.

According to the Third Circuit Court of Appeals, applying Pennsylvania law, "late notice will only release an insurance company from its obligations under a policy if it can prove actual prejudice." *Lexington,* 815 F.2d at 896 (citing *Brakeman,* 472 Pa. at 66, 371 A.2d 193). As the Court explained:

[T]he purpose of the prejudice requirement is to allow an insurer to refuse payment only if its procedural handicap has led to disadvantageous, substantive results—in other words, if the insured's violation of its contract has proximately caused its insurer damages.

. . . . .

... [P]rejudice requires a showing that the lateness of notice probably altered the result. . . .

*Id.,* 815 F.2d at 898–99. In this case, the parties vigorously dispute the steps Genesis could have or would have taken and the extent to which those steps might have merely duplicated Generali's efforts to investigate the fire and conduct the litigation. As Generali correctly argues, it had a powerful incentive to conduct a zealous and thorough defense of the Lasdon lawsuit to reduce its own liability. Genesis is now engaged in second guessing what the most appropriate steps would have been. On the other hand, Genesis takes issue with the effectiveness of Generali's investigation, criticizing several aspects of Generali's handling of Lasdon's claim. It cannot be said on this record, however, that the steps Genesis suggests would, as a matter of law, probably have produced a different result.

This is not a case where an insurer received notice *after* a settlement or adverse judgment on the claim. *Compare United National,* 1992 WL 210000, at *6 ("prejudice to an insurer will be found as a matter of law where notice is first supplied when the insured's liability is a fait accompli"); *Metal Bank of America, Inc. v. Insurance Co. of N. America,* 360 Pa.Super. 350, 360, 520 A.2d 493 (Super.Ct.1987) ("[A] settlement was already a fait accompli, and the insurers, who were being called upon to provide funds for the settlement had no opportunity to control the proceedings or in any way protect themselves."). Genesis received notice in January

1994 and the trial of Lasdon's claim against Generali did not begin until nearly six months later. In January 1994 no settlement had been reached.

Genesis has not demonstrated actual prejudice as a matter of law. Because there are genuine issues of material fact with respect to the issues of untimely notice and actual prejudice, Genesis' motion for summary judgment on that basis is denied.

■ Genesis' third basis for seeking summary judgment is res judicata. Genesis argues that Generali failed to raise the "defense" of the "Other Insurance" clause in the Generali policy in the underlying lawsuit by Lasdon. Genesis argues that Generali should now be barred from seeking contribution on the basis of the "Other Insurance" provision because it elected not to pursue such a defense against the insured.

This argument is unavailing. As Genesis itself states the rule of res judicata:

> [W]hen a court of competent jurisdiction has entered a *final judgment on the merits* of a cause of action, the parties to the suit and their privies are thereafter bound....

*Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (emphasis added). As Genesis concedes, the action by Lasdon against Generali was settled and discontinued without a final judgment. Genesis has pointed to no authority for the proposition that a party is bound under such circumstances.

■ Pennsylvania law does give res judicata effect to a consent judgment. *Matternas v. Stehman*, 434 Pa.Super. 255, 261–62, 642 A.2d 1120 (Super.Ct.1994); *see also Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). But a consent decree is "a judgment only as to matters actually litigated and cannot preclude claims which were not raised before and resolved by the approving court." *Sullivan*, 811 F.2d at 181 (citing *Keystone Bldg. Corp. v. Lincoln Savs. and Loan*, 468 Pa. 85, 360 A.2d 191 (1976)). Generali's claim for contribution against Genesis as a co-insurer is not a claim that was decided in the underlying Lasdon action, and there is nothing in the record

before the Court on this motion to indicate that any consent decree or judgment was entered with respect to such a claim. Therefore, Generali is not precluded from asserting an action for contribution against Genesis based on the prior Lasdon litigation action and Genesis' motion for summary judgment on this basis is denied.

## CONCLUSION

Accordingly, Generali's motion for summary judgment and Genesis' cross-motion for summary judgment are both denied.

**SO ORDERED.**